IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENYA YVONNIA COLLINS,
Plaintiff,

v.

Case No. 18–CV–00643–JPG

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

## MEMORANDUM OPINION AND ORDER

This is a Social Security disability appeal. Before the Court is Plaintiff Kenya Yvonnia

Collins's Brief. (ECF No. 37). Defendant Commissioner of Social Security ("Commissioner")

responded. (ECF No. 43). For the reasons below, the Court **AFFIRMS** the Commissioner's

disability decision and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

## I.    PROCEDURAL & FACTUAL HISTORY

In January 2014, Collins applied for Social Security disability insurance benefits and

supplemental security income. (Decision 1, ECF No. 31-2). She alleged an onset date—when she

first became disabled—of September 2012. (*Id.*). The Social Security Administration ("SSA")

denied her claims in June 2014 and again on reconsideration in April 2015. (*Id.*). Dissatisfied with

the SSA's decision, Collins requested a hearing before an administrative-law judge ("ALJ") under

20 C.F.R. § 404.929. (*Id.*). And in April 2017, Collins appeared before an ALJ and got the chance

to "submit new evidence . . ., examine the evidence used in making the determination or decision

under review, and present and question witnesses." § 404.929. (Decision at 1). The ALJ was then

tasked with issuing "a decision based on the preponderance of the evidence in the hearing record."

§ 404.929.

During the hearing, Collins testified about her vocational and medical histories. In the past decade, she worked as a courier for a transportation company; a file clerk for a bank; an accounts officer for another bank; a unit clerk for a hospital; a call-center representative for a major retailer; and a dispatcher for a security company. (*See* Tr. 10–17, ECF No. 31-2).

Collins stopped working in 2012 after developing type 2 diabetes. (*See id.* at 11). At the time, she was working as a courier while "taking classes online for medical billing and coding." (*Id.* at 8). She testified, "[O]nce I got sick with diabetes . . . I couldn't remember everything and I was in a lot of pain so I couldn't pass my tests." (*Id.* at 10). It took her "[p]robably a good six to eight months" to get it "under control"; and she began taking insulin in 2017. (*See id.* at 23).

Collins has also not returned to work "[d]ue to the fibromyalgia and chronic arthritis." (*Id.* at 18). She told the ALJ that she experiences "sharp pains" and "very bad muscle spasm and pain in [her] arms and . . . legs." (*Id.* at 18–19). The pain was once so bad that she thought she was having a heart attack and went to the emergency room: It was the fibromyalgia. (*Id.* at 22). Although she spent some time in physical therapy, Collins testified that she experiences too much pain to stretch. (*See id.* at 22–26).

On top of the diabetes, fibromyalgia, and chronic arthritis, Collins testified that she also suffers from "very painful . . . irritable bowel syndrome," migraines, and obesity. (*See id.* at 23–26). She has "at least 10" migraines per month. (*Id.* at 29). Although she takes prescription medication (Percocet and Lyrica), she usually must "lay down because [the] the pain medicine doesn't take away [her] migraine." (*Id.* at 25, 30).

Collins also discussed how her medical conditions affect her day-to-day life. She testified that she can walk for five-to-ten minutes before needing a twenty-to-thirty-minute rest; she can walk up and down stairs, though slowly; and she can sit in a desk chair for at least an hour, though

it causes "a lot of sharp pain," muscle spasms, and hand cramps when typing. (*Id.* at 26–27). The same could be said for routine chores like sweeping, cleaning dishes, and grocery shopping, which require frequent breaks and assistance: "[I]f I'm doing something like as simple as cutting fruit or something [], my fingers will get jammed where they stuck [sic] for a while." (*See id.* at 29).

After the hearing, the ALJ applied the five-step analysis used to determine whether an applicant is disabled and determined that Collins is not disabled. (Decision at 1). During this "sequential evaluation," findings made at each step affect later steps. *See* 20 C.F.R. § 404.1520(a).

At Step 1, the ALJ determined that Collins has not engaged in substantial gainful activity since her alleged onset date in 2012. (Decision at 3).

At Step 2, the ALJ evaluated Collins's medical conditions and concluded that she suffers from the following "severe impairments": lumbar degenerative disc disease, arthritis, type 2 diabetes, and obesity. (*Id.* at 3). That said, the ALJ noted that her anemia, hypertension, irritable bowel syndrome, migraines, and fibromyalgia do not rise to the level of "severe impairments," finding "little evidence to suggest that there were significant anemic symptoms"; "no significant symptoms of hypertensive crisis"; no "significant clinical signs of inflammatory bowel disease"; only "intermittent" migraines with "no outpatient or emergency department visits associated with them"; and no clinical "diagnosis of fibromyalgia" consistent with accepted practices. (*See id.* at 4–6).

At Step 3, the ALJ concluded that "[t]here is insufficient objective medical evidence" showing that Collins has "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" the Code of Federal Regulations. (*Id.* (citing § 404.1520)). In doing so, he noted the appliable regulation and explained why Collins's four severe impairments do not rise to the level of "presumptive disability." (*See id.* at 6–7).

Before advancing to Step 4, the ALJ evaluated Collins's residual functional capacity ("RFC") and determined that she "has the residual functional capacity to perform sedentary work . . . except that [she] cannot climb ladders, ropes or scaffolds." (*Id.* at 7). The RFC assessment identifies limitations that an applicant's impairments impose on their ability to work. § 404.1520(e). It is "based on all the relevant medical and other evidence in . . . the case record." *Id.* Here, the ALJ found that Collins's testimony about "widespread body pain, arthritis and low back pain—including statements about "weakness, muscle spasms, headaches and diabetes"—was unsubstantiated by objective medical evidence:

- "In terms of [Collins]'s alleged degenerative disc disease,. . . she was noted to be taking narcotic pain relievers, but her gait was observed to be normal and on at least one occasion, she denied having back pain altogether." (Decision at 8 (citing Ex. 19F at 22–25, ECF No. 31-16)). In other words, she "has minimal degenerative disc disease, which is in contrast to the subjective complaints of low back pain offered in testimony." (*Id.*).

- "In terms of [Collins]'s alleged arthritis, it has been listed as a problem on most her treatment records, though imaging of the extremities was infrequent and not conclusive of any specific joint disease." (*Id.*). In short, "[t]here was no imaging evidence in the file that supports [her] complaints of pain." (*Id.*).

- "In terms of [Collins]'s diabetes," the ALJ noted that Collins was diagnosed with diabetes "before the alleged onset date" and experienced "elevated blood glucose levels." (*Id.* at 9 (citing Exs. 19F at 43; 3F at 27–31, ECF No. 31-7)). That said, she received "dietary and exercise recommendations" that "she has not always followed," suggestive of "intermittent poor control of diabetes." (*Id.*). Even with her "history of fluctuating blood glucose levels,. . . she has not been hospitalized for hypoglycemia, hyperglycemia or diabetic crisis since the alleged onset date." Put differently, although Collins's "diabetes is severe, based on her medications and blood glucose readings, there is no evidence to suggest that she would be unable to perform sedentary work duties." (*Id.*).

- "In terms of [Collins]'s obesity," which "is clearly in the 'severe' functional range based on the BMI values of $30 \text{ kg/m}^2$, . . . the available record does not reveal any symptoms that would result in the inability to perform a significant range of sedentary work." (*Id.*).

- The ALJ gave "some weight" to the opinions of state physicians Dr. Lenore Gonzalez and Dr. Julio Pardo, who found that Collins's "chronic pain issues . .. limited [her] to the ability to sit for six to eight hours per day; stand and walk for six of eight hours per day; to life and carry 20 pounds occasionally and ten pounds frequently; to occasionally climb ladders, ropes or scaffolds; could occasionally climb stairs and ramps, could frequently stoop and would have unlimited capacity to balance kneel, crouch and crawl." (*See id.* at 9–10). Though those opinions were "generally supported by the evidence, . . . subsequent medical records found greater limitations of function." (*See id.*).

- The ALJ gave "significant weight" to the opinion of Collins's treating physician, Dr Anthony Truong, a "key support for the finding that [she] retains the ability to perform the type of sedentary work described in the residual functional capacity." (*Id.* at 10). "Dr. Truong stated that it appeared [Collins] was malingered and that she had a very poor outlook and attitude. He also noted that [Collins] admitted that she did not do any home therapy, and that when she did go [to] therapy sessions, she was not motivated or involved. Finally, he noted that she refused a referral for other services he thought could be beneficial. These findings by a treating source, indicating that [Collins] was likely exaggerating her symptoms and do not appear motivated to do what was necessary to elevate her problems, [are] strong evidence that [she] is not as limited as she has alleged." (*Id.* (citing Ex. 6F at 25, ECF No. 31-8)).

At Steps 4 and 5, the ALJ considered Collins's RFC and concluded that she "is capable of performing past relevant work as a charge account clerk" or as a "cutter-and-paster" or "telephone quotation clerk." (*See id.* at 10–11 (citing Dictionary of Occupational Titles ## 205.307-014, 249.587-014, 237.367-046, https://occupationalinfo.org/cat2div4_0.html.)). As a result, the ALJ found that Collins "is not disabled." (*Id.* at 12). The Appeals Counsel then denied Collins's request for review, so the ALJ's Decision became "the final decision of the Commissioner of Social Security." (Notice of Appeals Council Action 1, ECF No. 31-2).

In 2018, Collins appealed to this Court under 42 U.S.C. § 405(g), which authorizes judicial review of "any final decision of the Commissioner of Social Security." (*See* Compl. 1, ECF No. 2).

## II.    LAW & ANALYSIS

"It is well established that judicial review of administrative determinations under the Social Security Act is severely limited." *Williams v. Califano*, 593 F.2d 282, 284 (7th. Cir. 1979). The

Court must treat the ALJ's factual findings as conclusive "so long as they are supported by 'substantial evidence.' " *Beistek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This is a very deferential standard of review. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "It is the responsibility of the ALJ, not the reviewing court, to resolve conflicting evidence." *Brewer v. Chater*, 103 F.3d 1384 (7th Cir. 1997). In other words, the Court must only determine "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).

Although not stating so explicitly, Collins's Brief essentially amounts to a challenge to the RFC assessment. She states that she has "continuous pain every day . . . from the time [she] wake[s] up" until she goes to sleep. (Collins's Brief 1, ECF No. 37). She "cannot sit, stand, for any long periods without" sharp pain in her neck and back. (*Id.*). She also wakes up with migraines that are only temporarily relieved by her prescription medication; has "to change positions constantly and immediately stop what [she is] doing to try to get relief"; "cannot . . . wash dishes or sweep, mop without getting this sharp pain within ten minutes or less"; "suffer[s] from pain with when it's extremely" hot or "cold outside"; experiences leg cramps and hip, arm, shoulder, chest, pelvic, hand, and finger pain, as well as "diabetic nerve pain from [her] toes up to [her] leg to [her] knees." (*Id.* at 1–3). She also described her (presumably recent) attempt to work at a social-services office—by the third day, she "was in the emergency room due to sharp pain in [her] hands, arms, shoulder swelling." (*Id.* at 3). She "get[s] sharp pain doing anything physical," even having "to take breaks to finish" writing her Brief. (*Id.* at 4–5).

An ALJ examines the entire case record when considering the intensity, persistence, and limiting effects of an individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016).[1] This includes the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant information in the individual's case record. *Id.* But not every factor is relevant in every case: An ALJ need only discuss those factors that are "pertinent to the evidence of record." *Id.* An ALJ may also consider the frequency of the claimant's complaints, the frequency of the claimant's attempts to receive treatment, and, if the claimant did not seek treatment, then why not. *Id.* Ultimately, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* An ALJ's failure to adequately explain a credibility finding by discussing specific reasons supported by the record is therefore grounds for reversal. *Terry v. Astrue*, 380 F.3d 471, 477 (7th Cir. 2009).

With that in mind, "because the ALJ is in the best position to determine a witness's truthfulness and forthrightness," *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cr. 2015), the Court may "overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support," *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th. Cir. 2017). An ALJ is therefore " 'free to discount the applicant's testimony on the basis of the other evidence in the case' as '[a]pplicants for disability benefits have an incentive to

---

[1] As noted by the Commissioner, the SSA recently "abandon[ed] the use of the term 'credibility' and instead focuses on determining the 'intensity and persistence of [the claimant's] symptoms.' " (Comm'r's Brief 8, ECF No. 43 (quoting SSR 16-3p, 2016 WL 1119029, at *4). The Court, however, remains "bound by case law concerning the same regulatory process under the 'credibility' analysis of the former" regulation. *Farr v. Colvin*, No. 14 C 6319, 2016 WL 3538827, at *5 n.3 (N.D. Ill. June 29, 2016) (collecting cases).

exaggerate their symptoms.' " *Stepp*, 895 F.3d at 720 (quoting *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006)).

The Seventh Circuit confronted a similar question in *Stepp*, affirming an ALJ's decision to discount a claimant's testimony about the intensity and persistence of her symptoms:

> Here, the ALJ made only a partially adverse credibility finding. Although she determined that Stepp's testimony was not fully supported by the record, she also discounted opinions from other physicians that seemed to understate Stepp's condition. For instance, the ALJ assigned "little weight" to state agency medical consultant Dr. Dobson's determination that Stepp could perform "light work" (i.e., that she could lift twenty pounds occasionally and ten pounds frequently, and that she could stand and/or walk for up to six hours in an eight-hour workday), concluding that the record demonstrated that Stepp was "more limited" than Dr. Dobson determined. The ALJ ultimately found that Stepp could perform sedentary work—which is less taxing than "light work"—with a few additional limitations. The ALJ acknowledged that Stepp continued to report chronic pain throughout the adjudicative period but concluded that the record demonstrated improvement in Stepp's condition following surgery, medication changes, and therapy. While the ALJ credited Stepp's assertion that she still experienced residual pain, the ALJ determined that such pain "does not equate to disability." In light of all of the evidence before her, we believe that the ALJ's finding that Stepp's testimony was only partially credible was not patently wrong.

*Id.* at 720–21 (internal citations omitted).

So too here, the ALJ's RFC assessment was supported by substantial evidence and not patently wrong. Although he acknowledged that Collins does in fact have severe impairments, the ALJ went through each and described why "the objective evidence does not fully support her testimony" that she experiences "debilitating pain." (Decision at 8). For example, the ALJ gave "significant weight" to the opinion of Collins's treating physician, who noted that Collins asked, "[H]ow many [times] do I have to do [physical therapy] before I get disability?" (*Id.* at 10; Ex. 6F at 25). He also stated that "because of her statement today, it appears she is malingering but I

cannot prove this. She has a very poor attitude and outlook regarding her diseases and her prognosis. She admits she does not do any home therapy, and when she does go to the therapy sessions, she . . . is not motivated and not involved." (Ex. 6F at 25). What's more, other medical reports recounted that Collins did not appear in "acute distress" while personally appearing for an appointment—a far cry from her assertion that she cannot hold a pen without debilitating pain. (*E.g.*, Ex. 19F at 52). Even so, like the ALJ in *Stepp*, the ALJ here acknowledge that Collins *does* experience pain and gave less weight to the opinions of two state physicians that found lesser limitations. (Decision at 9–10). Ultimately, however, the ALJ properly recognized that a claimant cannot be found disabled based solely on subjective complaints of pain—there must always be medical evidence. (*See id.* at 8–10). *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("The claimant bears the burden of submitted medical evidence establishing her impairments and her residual functional capacity.") And although the Court construed her pro se Brief liberally, Collins does not point to any medical evidence that the ALJ ignored. In any event, the ALJ specifically articulated reasons, supported by citations to the record, to discredit Collins's alleged symptoms. Put differently, the fact Collins "disagrees with the significance that the ALJ assigned to the evidence he cited does not mean that substantial evidence does not support his decision." (Comm'r's Brief at 10). Rather, the Court finds that the ALJ's Decision was adequately supported and not patently wrong.

## III.    CONCLUSION

The Court **AFFIRMS** the Commissioner's disability decision and **DIRECTS** the Clerk of Court to **ENTER JUDGMENT**.

**IT IS SO ORDERED.**

Dated: Tuesday, November 3, 2020                    S/J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **UNITED STATES DISTRICT JUDGE**